**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Nidez Valencia, Jr., | No. CV 21-00335-TUC-RCC (LAB) |
| Petitioner, | REPORT AND RECOMMENDATION |
| vs. | |
| David Shinn; et al., | |
| Respondents. | |

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on May 24, 2021 by Gregory Nidez Valencia, Jr., a prisoner currently incarcerated in the Arizona State Prison Complex in Buckeye, Arizona.  (Doc. 4)

Also pending is the respondents' motion to strike Valencia's addendum.  (Doc. 20)

Pursuant to the Rules of Practice of this court, the matter was referred to Magistrate Judge Bowman for report and recommendation.  LRCiv 72.2.  (Doc. 10)

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the motion to strike and denying the petition on the merits. A.R.S. § 13-716 is not an impermissible *ex post facto* law, and Valencia's life sentence with the possibility of parole pursuant to A.R.S. § 13-716 does not violate the Eighth Amendment.

Summary of the Case

"In 1995, when Valencia was seventeen, he and an accomplice were attempting to steal a bicycle from a residence when its owner confronted them and Valencia shot and killed him."

*State v. Valencia*, 2020 WL 4728893, at *1 (Ariz. Ct. App. 2020), review denied (Feb. 2, 2021); (Doc. 16-8, p. 94)  Valencia was convicted of first-degree murder and sentenced to "a natural life sentence of imprisonment," which precluded the possibility of parole. *Id.*  Some time later, the U.S. Supreme Court held that a natural life sentence for a juvenile offender may be unconstitutional under certain circumstances. *Id.* (citing *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)).  Valencia subsequently challenged his sentence and was given an evidentiary hearing where he "met his burden of establishing that his crime reflected transient immaturity rather than irreparable corruption." *Id.* (punctuation modified).  "Valencia was thereafter resentenced to life with the possibility of parole after twenty-five years [in accordance with A.R.S. § 13-716]." (Doc. 16-8, p. 94)

On direct appeal, Valencia argued that (1) A.R.S. § 13-716 is an impermissible *ex post facto* law and (2) his new life sentence with the possibility of parole violates the Eighth Amendment. (Doc. 16-8, p. 39)  On August 14, 2020, the Arizona Court of Appeals affirmed Valencia's sentence. (Doc. 16-8, pp. 93-99)  The Arizona Supreme Court denied review on February 2, 2021. (Doc. 16-8, p. 120)

On May 24, 2021, Valencia filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 4)  Valencia claims that the sentencing statute, A.R.S. § 13-716, is an unconstitutional *ex post facto* law. (Doc. 4, p. 6)  He further claims that his new sentence violates the Eighth Amendment because A.R.S. § 13-716 "provides no constitutional guidance as to how to determine parole eligibility for juveniles." (Doc. 4, p. 9)

On November 24, 2021, the respondents filed an answer in which they argue that Valencia's claims should be denied on the merits. (Doc. 16, pp. 1-32)  Valencia filed a reply on December 6, 2021. (Doc. 18)  He filed an addendum on March 17, 2022. (Doc. 19)

On March 30, 2022, the respondents filed a motion to strike the addendum. (Doc. 20)  They argue that the addendum violates Fed.R.Civ.P. 15 because it amends the petition without complying with that Rule's requirements for filing an amended pleading. *Id.*  Valencia filed a response to the motion in which he states that the addendum is not an amendment of his petition. (Doc. 23, p. 3)  The respondents did not file a timely reply.

The court takes Valencia at his word. The addendum does not amend his petition to add additional claims. It simply adds newly discovered information that the court may consider. The respondents' motion to strike the addendum should be denied. (Doc. 20)

In his addendum, Valencia asserts that the current Arizona Board of Executive Clemency is illegal because more than two of its members come from the same professional background. (Doc. 19, p. 2) He further maintains that the prison system does not "timely process parole eligibility time." *Id.* This new information, assuming it is true, might be relevant to an "as applied" challenge to Arizona's parole system. Valencia, however, does not bring an "as applied" challenge in his pending petition. This information, therefore, is not relevant.

The court finds that petition should be denied on the merits.

Discussion

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). If the petitioner is in custody pursuant to the judgment of a State court, the writ will not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If the highest State court fails to explain its decision, this court looks to the last reasoned State court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). In this case, the last reasoned State court decision came from the Arizona Court of Appeals.

"[The] standard is intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316, 135 S.Ct. 1372, 1376 (2015) (punctuation modified). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Id.*

A decision is "contrary to" Supreme Court precedent if that Court already confronted "the specific question presented in this case" and reached a different result. *Woods*, 135 S.Ct. at 1377. A decision is an "unreasonable application of" Supreme Court precedent if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Id*. at 1376. "To satisfy this high bar, a habeas petitioner is required to show that the State court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (punctuation modified).

If the petitioner argues that prior adjudication "resulted in a decision that was based on an unreasonable determination of the facts" pursuant to section 2254(d)(2) then "the petitioner must establish that the state court's decision rested on a finding of fact that is *objectively* unreasonable." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (punctuation modified) (emphasis in original). It does not appear that Valencia is arguing this point in his petition.

Discussion: Ex Post Facto Law

In his first ground for relief, Valencia asserts that the sentencing statute, A.R.S. § 13-716, is an unconstitutional *ex post facto* law. (Doc. 4, p. 6) Valencia raised this claim on direct appeal. (Doc. 4, p. 7) The statute reads as follows:

> Notwithstanding any other law, a person who is sentenced to life imprisonment with the possibility of release after serving a minimum number of calendar years for an offense that was committed before the person attained eighteen years of age is eligible for parole on completion of service of the minimum sentence, regardless of whether the offense was committed on or after January 1, 1994. If granted parole, the person shall remain on parole for the remainder of the person's life except that the person's parole may be revoked pursuant to § 31-415.

Ariz. Rev. Stat. § 13-716.

"A change in law violates the Ex Post Facto Clause of the Federal Constitution when it inflicts a greater punishment than the law annexed to the crime, when committed." *Gilman v. Brown*, 814 F.3d 1007, 1014 (9th Cir. 2016) (punctuation modified). "Central to the *ex post facto* prohibition is a concern for the lack of fair notice and governmental restraint when the

- 4 -

legislature increases punishment beyond what was prescribed when the crime was consummated." *Watson v. Estelle*, 886 F.2d 1093, 1096 (9th Cir. 1989) (punctuation modified). "The actual state of the law at the time a defendant commits the offense is determinative of whether he had fair notice of the consequences of his actions." *Id.*

When Valencia committed his crime in 1995, he faced a sentence of death, natural life, or life with the possibility of parole after 25 years. (Doc. 16-8, p. 95)  At least, that is what the statute said originally.  In fact, in 1993, the Arizona legislature "eliminated parole for all offenders who committed offenses after January 1, 1994." *Id.*, pp. 95-96.  So when Valencia committed his offense in 1995, he faced really only death[1] or a term of natural life. He received the latter. Some time later, the U.S. Supreme Court held that a natural life sentence for juvenile offenders may be unconstitutional under certain circumstances. (Doc. 16-8, p. 96) (citing *Miller v. Alabama*, 567 U.S. 460 (2012))  The Arizona legislature subsequently reestablished parole availability for juveniles sentenced to life imprisonment by instituting A.R.S. § 13-716 (enacted in 2014). Valencia successfully challenged his natural life sentence and was eventually "resentenced to life with the possibility of parole after twenty-five years [in accordance with A.R.S. § 13-716]." *Id.,* pp. 94-95.

The new sentencing scheme for juveniles, A.R.S. § 13-716, does not "inflict[] a greater punishment than the law annexed to the crime, when committed." *Gilman v. Brown*, 814 F.3d 1007, 1014 (9th Cir. 2016).  A sentence of life imprisonment with the possibility of parole is not a greater punishment then a sentence of natural life or a sentence of death.  It is not an *ex post facto* law.  *See also* (Doc. 16-8, p. 97) ("By reestablishing a parole system for juvenile homicide offenders, the legislature enacted a system of punishment that was *less harsh* than the existing system for similarly situated non-juvenile homicide offenders.")  (emphasis added)

Valencia argues that the original sentencing statute was later found to be unconstitutional by *Miller v. Alabama*, and therefore, for the purposes of the *ex post facto* analysis, one should

---

[1] The death penalty for juvenile offenders was invalidated in 2005. *Roper v. Simmons*, 543 U.S. 551, 578 (2005).

consider the only constitutional sentence available at the time, which Valencia asserts was a sentence of 22 years' incarceration for second-degree murder. A sentence of life with the possibility of parole after 25 years is a greater punishment than a sentence of 22 years' incarceration. Therefore, he reasons, A.R.S. § 13-716 is an unconstitutional *ex post facto* law. The court does not agree.

The *ex post facto* analysis must consider the sentence available at the time the offense was committed. *See Watson v. Estelle*, 886 F.2d 1093, 1096 (9th Cir. 1989) ("The actual state of the law at the time a defendant commits the offense is determinative of whether he had fair notice of the consequences of his actions."). It does not matter if that sentence would later become unconstitutional. *See Dobbert v. Florida*, 432 U.S. 282, 297, 97 S. Ct. 2290, 2300 (1977) ("Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.), *called into doubt on another issue by Collins v. Youngblood*, 497 U.S. 37, 46, 110 S. Ct. 2715, 2721 (1990).

Valencia has not shown that prior adjudication of this issue by the State courts "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* (Doc. 16-8, pp. 95-97)

Discussion: The Parole Statute

In his second ground for relief, Valencia asserts that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it provides no constitutional guidance about how to determine parole eligibility for juveniles. (Doc. 4, p. 9) He maintains that the parole statute should state explicitly that eligibility for parole should hinge on whether the prisoner's crime resulted from "transient immaturity" in accordance with *Miller v. Alabama* and *Montgomery v. Louisiana.* (Doc. 4, pp. 9-10) Valencia raised this claim on

direct appeal. (Doc. 4, p. 9) Valencia, however, misunderstands the Supreme Court's decisions in *Miller* and *Montgomery*.

"The Eighth Amendment's prohibition of cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. 460, 469, 132 S. Ct. 2455, 2463 (2012) (punctuation modified) "That right . . . flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Id.*

In *Miller*, the Supreme Court held that the Eighth Amendment prohibited sentencing a juvenile offender convicted of murder to life without parole if that crime was the result of "the transient immaturity of youth." *Montgomery v. Louisiana*, 577 U.S. 190, 208, 136 S. Ct. 718, 734, as revised (Jan. 27, 2016). "*Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* (In *Montgomery*, the Supreme Court held that *Miller* "announced a substantive rule of constitutional law" and therefore applied retroactively. *Id.*, p. 212, p. 736.)

In this case, Valencia was granted an evidentiary hearing where he "met his burden of establishing that his crime reflected transient immaturity rather than irreparable corruption." (Doc. 16-8, pp. 94-95) (punctuation modified) He was subsequently "resentenced to life with the possibility of parole after twenty-five years." (Doc. 16-8, p. 95) This resentencing granted Valencia everything that was required under *Miller*.

Valencia argues that parole eligibility should hinge on whether his crime was the product of transient immaturity. He is incorrect. It is the sentence itself that is determined by this inquiry. Once the sentence of life with the possibility of parole is imposed, the requirements of *Miller* and *Montgomery* are satisfied. Neither case stands for the proposition that parole decisions themselves must hinge on whether a prisoner's crime was the product of transient immaturity.

Valencia has not shown that prior adjudication of this issue by the State courts "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent"

or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* (Doc. 16-8, pp. 98-99) ("We note that *Miller* does not require a court to account for a defendant's youth at all when determining whether he is eligible for parole. . . ."); *see also Jessup v. Shin*, No. 18-16820, (9th Cir. April 21, 2022) (*Miller* requires a particular procedure before sentencing a juvenile offender to life without parole; it does not require a particular outcome.).

Valencia further states that he appeared before the Arizona Board of Executive Clemency on May 9, 2020 for a parole hearing. (Doc. 4, p. 10) He did not obtain parole then, and he believes he does not have a "meaningful opportunity" to obtain parole in the future. (Doc. 4, p. 12) Valencia did not raise these issues before the Arizona Court of Appeals. (Doc. 16-8, pp. 38-60) Accordingly, the court concludes that they are not part of his claim for relief. (If they were, the court might find that his claim is not properly exhausted and dismiss his petition. *See* 28 U.S.C. s 2254(b)(1).)

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition for writ of habeas corpus and denying the respondents' motion to strike the addendum. (Doc. 4); (Doc. 20)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived. The Local Rules permit a response to an objection. They do not permit a reply to a response without the permission of the District Court.

DATED this 29th day of April, 2022.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge